

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-385-CV

ESTATE OF WILLIAM BERNARD
HERRING, JR., DECEASED

-----------

FROM PROBATE COURT NO. 1 OF TARRANT COUNTY

-----------

## MEMORANDUM OPINION[1]

-----------

### I. INTRODUCTION

Appellant Evelyn Petzold, who is proceeding pro se, appeals the judgment signed by the probate court awarding property ("the Rosemere property") to Appellee Janis McCrary, Independent Administratrix of the Estate of William Bernard Herring, Jr., Deceased. The primary issue that we decide is whether the trial court abused its discretion by enforcing the parties' Rule 11 agreement

---

[1] *See* Tex. R. App. P. 47.4.

and awarding the Rosemere property to McCrary in her capacity as administratrix. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The record reflects that the Rosemere property was transferred from W.P. Brothers to Herring and his wife Juanita by warranty deed on March 29, 1962, and that Juanita predeceased Herring. Herring did not transfer the property during his lifetime and continuously resided on the property from 1962 until 2005. During part of that time, Herring allowed several individuals to live with him, including his business partner Esther Jackson, his cousin Paula Petzold, and Evelyn. As part of this living arrangement, Paula and Esther took out a $78,000 loan to expand the house to accommodate the four of them.

Herring died intestate in 2005, and thereafter, Evelyn, Esther, and Paula filed affidavits in the Tarrant County Deed Records challenging Herring's sole ownership of the Rosemere property. Evelyn, in her affidavit, claimed that Herring had orally given her an ownership interest in the Rosemere property.

McCrary filed an application in the probate court for letters of administration and was appointed the independent administratrix of Herring's estate. McCrary filed an inventory, appraisement, and list of claims and included the Rosemere property as part of Herring's estate. The probate court approved the inventory.

2

McCrary obtained a judgment of possession for the Rosemere property, but the day before the writ of execution could be executed by the sheriff, Evelyn filed for bankruptcy. In the bankruptcy proceedings, the bankruptcy judge indicated that a state court should determine ownership of the property.

McCrary, in her capacity as independent administratrix, then filed a trespass to try title lawsuit against Evelyn, Esther, and Paula.[2] Evelyn filed a pro se answer. Six months after McCrary filed suit, the parties attended mediation and entered into a written "Memorandum of Agreement." As part of the agreement, the defendants agreed to

> give up all claims to the house at 509 Rosemere, Fort Worth, Texas 76111 and agree[d] that no claims thereon will be made or further asserted in United States Bankruptcy Court, except as follows[:] . . . (D) Upon sale of the house, Defendants will receive 10% of the sellers distribution after all expenses of sale including, but not limited to such items as Realtors liens, tax liens, utility liens, materialman's liens, mechanics liens and any other debts on the property.

After the mediation, the defendants filed a motion for summary judgment and counterclaim, along with affidavits, stating that "they will follow the agreement for division made at mediation" but asking that the court acknowledge their affidavits and that the Rosemere property "be removed from

---

[2] McCrary also filed suit against John Petzold; however, he did not claim an interest in the property and was dismissed from this suit.

the assets listed [in Herring's estate,] except for the proceeds of sale due to [them]." McCrary filed a motion requesting that the probate court sign a judgment awarding the Rosemere property to Herring's estate.

The probate court held a hearing on the motion for summary judgment and on McCrary's motion for judgment. Of the defendants, only Paula and Esther appeared at the hearing. At the outset of the hearing, McCrary's attorney stated that no proper relief was requested in the defendants' motion for summary judgment and that the probate court should proceed on McCrary's motion for judgment. McCrary's attorney asked that title be awarded to McCrary as administratrix and that the probate court accept the mediation agreement as a Rule 11 agreement. The probate court asked if the defendants had an objection to the form of the judgment, and the following discussion took place:

> [PAULA]: Yes, I do. Only in the fact that I don't understand why we're going through this when –
>
> THE COURT: It has been required by the bankruptcy court.
>
> [PAULA]: This has been required by the bankruptcy court?
>
> THE COURT: Yes, because we control title in the State. So title is in dispute -- even if there is a settlement agreement. The settlement agreement is not the Court speaking. I can only speak by order, decree or judgment. So this stands between all of you and resolution for this matter.

[PAULA]: Did not the mediation that we went through --

THE COURT: That's how you reach an agreement; the mediation does not put it into effect.

[PAULA]: I'm still confused. I'm not an attorney so I'm a little confused.

What does this actually do, this Rule 11?

THE COURT: Rule 11 was your settlement agreement; this [judgment] sets and puts into effect your settlement agreement.

. . . .

It resolves the matter and allows the property to be sold, according to your agreement. The title company is not going to close without an order from the Court.

The probate court spent a great deal of time explaining to Esther and Paula the necessity of entering a judgment, and the probate court ultimately accepted the parties' agreement and signed a judgment awarding the Rosemere property to

McCrary as independent administratrix of Herring's estate.[3]  This appeal by

Evelyn followed.

### III.  SETTLEMENT AGREEMENT WAIVES CLAIMS

Evelyn characterizes the following statements as her "issues":

1). When a verbal contractual agreement has been made, and is evidenced by the payments made, and by the performance of both parties for an extended period of time (18 years), there is no requirement that the contract be written to be considered valid.

2). In a Trespass to try Title action a plaintiff must establish superior title out of a common source or prove title by prior possession coupled with proof that possession was not abandoned.

3). Undisputed affidavits, executed before an independent Notary Public and sworn under declaration of penalty of perjury, which fully state the facts of a case, cannot be ignored or overruled.

4). No judgment is necessary when a Rule 11 agreement has been reached and accepted by the Court.

Evelyn, in her prayer, urges us to take notice of and to acknowledge the

evidence of the verbal contract mentioned in the undisputed affidavits and the

---

[3] The probate court did not enter a separate order on the defendants' motion for summary judgment or reference their motion for summary judgment in its order.  Because the probate court's judgment awards the Rosemere property to McCrary in her capacity as administratrix, it thereby impliedly denied the relief prayed for in the defendants' motion for summary judgment, no separate judgment denying the motion for summary judgment was necessary. *See generally Parker v. Barefield*, 206 S.W.3d 119, 121 (Tex. 2006) (holding that request for leave to amend pleadings was effectively denied when trial court granted special exceptions and dismissed case).

6

payment records included with the motion for summary judgment, to rescind the judgment signed by the probate court, and to "reaffirm" the Rule 11 agreement. In accordance with Texas Rule of Appellate Procedure 38.9, we liberally construe Evelyn's four issues as a complaint that the trial court erred or abused its discretion by enforcing the parties' Rule 11 agreement and awarding the Rosemere property to McCrary in her capacity as administratrix. *See* Tex. R. App. P. 38.9.

Pursuant to Rule 11, no agreement between the parties or their attorneys shall be enforceable unless the agreement is either (1) in writing, signed by the parties, and filed with the papers as part of the record or (2) made orally in open court and entered as part of the record. Tex. R. Civ. P. 11. Rule 11 aims to eradicate the misunderstandings and controversies commonly associated with verbal agreements among parties and counsel. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). Agreements in writing and filed with the court allow the writings to "speak for themselves" so that "the court can judge of their import, and proceed to act upon them with safety." *Id.* A trial court has a ministerial duty to enforce a valid Rule 11 agreement. *Scott-Richter v. Taffarello*, 186 S.W.3d 182, 189 (Tex. App.—Fort Worth 2006, pet. denied); *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

7

Thus, the trial court here had a ministerial duty to enforce the parties' Rule 11 agreement if it was valid. Evelyn did not appear at the hearing on McCrary's motion for judgment and never challenged the validity and enforceability of the September 12, 2007 Rule 11 agreement (e.g., by attacking it on the grounds of fraud or mistake or by arguing that some exception to its enforcement applied), and she does not raise such a challenge on appeal. *See Scott-Richter*, 186 S.W.3d at 190. Instead, she urges us to "reaffirm" the Rule 11 agreement.

Because Evelyn urges us to "reaffirm" the Rule 11 agreement, it appears that she does not understand the legal effect of it. The Rule 11 agreement is "reaffirmed" by the trial court's judgment. Although the Rule 11 agreement does not explicitly state that the Rosemere property should be awarded to McCrary as independent administratrix, that is the effect of Evelyn's and the other defendants' agreeing to relinquish all their claims to the property. Without their claims clouding the title, the Rosemere property remained solely titled in Herring because he did not transfer his interest in the property by deed prior to his death. Consequently, the property remained in Herring's estate, of which McCrary was charged as independent administratrix with the duty of disposing of all property within Herring's estate. *See generally* Tex. Prob. Code Ann. § 405 (Vernon 2003) (listing items that must be included in account for

8

final settlement of estate, including disposition of property belonging to estate which has come into the administrator's hands).

The Rule 11 agreement signed by the parties is clear and unambiguous, stating that the parties "give up all claims to the house at 509 Rosemere, Fort Worth, Texas 76111." Accordingly, because Evelyn agreed to give up all claims to the Rosemere property pursuant to a valid Rule 11 agreement, the probate court did not err or abuse its discretion by performing its ministerial duty and granting McCrary's motion to enforce the settlement agreement. *See* Tex. R. Civ. P. 11; *Scott-Richter*, 186 S.W.3d at 191 (upholding trial court's grant of appellees' amended motion to enforce settlement agreement, despite appellants' arguments that settlement agreement had effect of imposing additional material terms to agreement that parties had yet to negotiate and agree upon, because appellants never challenged validity and enforceability of Rule 11 agreement); *see also Childers v. King Ranch, Inc.*, No. 13-03-00006-CV, 2005 WL 774512, at *5 (Tex. App.—Corpus Christi Apr. 7, 2005, no pet.) (mem. op.) (holding trial court did not abuse its discretion by granting relief in strict accordance with parties' Rule 11 agreements). We therefore overrule Evelyn's four issues.

## IV. Conclusion

Having overruled Evelyn's four issues, we affirm the probate court's judgment.

PER CURIAM

PANEL: WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DELIVERED: February 19, 2009